ANDINO *v.* CEPEDA.

APPEAL from the District Court of San Juan.

No. 325.—Decided June 22, 1909.

PROCEEDINGS TO ESTABLISH OWNERSHIP—IDENTIFICATION OF THE PROPERTY.—To arrive at the conclusion that two rural estates under discussion are the same,

the fact that the adjoining owners are not absolutely the same is a discrepancy of no importance and which need not be taken into account.

CONTRADICTORY EVIDENCE—CONSIDERATION THEREOF.—When the evidence is contradictory this court cannot set aside the conclusion reached by the trial court, unless it be shown that the latter in weighing .the evidence has acted with passion, or prejudice, or that it was prompted by some other similar motive.

The facts are stated in the opinion.

*Mr. Sarmiento* for appellant.

*Mr. Emigdio S. Ginorio* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

Adolfo Andino Acosta instituted proceedings in the District Court of San Juan to establish the ownership of two tracts of land which he described in his initial petition under letters A and B, situated in the *barrio* of Santurce of this city.

With respect to the tract of land marked A, there is no issue or discussion and for this reason we have nothing to say as it is not the subject matter of the appeal taken.

The tract marked letter B appears to consist of two *cuerdas;* one-half *cuerda* which the petitioner, Andino, purchased of Juan Domínguez, with regard to which half *cuerda* there does not appear to be any controversy either, and a *cuerda* and a half which Andino alleges that he bought of Zoila and Antonio Buzo for the price of 15 *pesos,* as shown in a private document dated June 18, 1890.

It is to this *cuerda* and a half which Andino alleges that be bought from Zoila and Antonio Buzo that this appeal relates.

According to a private document, this *cuerda* and a half is bounded as follows: On the north, by property belonging to Luis Salicrup; on the south by property of Gregoria Paris; on the east by lands belonging to Guil; and on the west, by property of Martín Domínguez.

Amalio Cepeda opposes the declaration of ownership to said *cuerda* and a half, because he alleges that he purchased it of Daniel Matos Quiñones by public deed executed on August 26, 1902, before Notary Damián Monserrat which was

recorded in the registry of property of this district, because
its vendor Matos Quiñones had had said tract previously re-
corded by virtue of proceedings to establish ownership.

In this deed the boundaries of the *cuerda* and a half are
described as follows: On the north, by property belonging to
Belén Requena; on the south, by property belonging to Epi-
fanio Cortijo; on the east, by property of the Estate of Guil;
and on the west by property belonging to Bartolo Canales and
Gregoria Paris.

The proceedings were prosecuted and the Judge of the
First Section of the District Court of San Juan on June 26,
1908, rendered judgment in which, among other particulars
which it is not necessary to mention, he sustained the opposi-
tion made by Amalio Cepeda and consequently held that
Adolfo Andino had not established the ownership of the tract
which formed part of estate B described in the initial petition,
taking into consideration for the boundaries the deed of sale
of Cepeda and the change of owners which has occurred since
then.

An appeal was taken from this judgment only as to the
*cuerda* and a half to which we have referred.

The record contains a statement of facts approved by the
trial judge.

The appellant as well as the respondent filed briefs and
made oral arguments at the hearing, the former attacking
the judgment appealed from and the latter sustaining it upon
the grounds which they deemed proper to adduce.

The trial judge states the reasons for his judgment in his
opinion, and with reference to the *cuerda* and a half says:

"The opposition of Cepeda does not refer to the entire tract B, but
to cne of the two lots of which it is composed—that is to say, the
*cuerda* and a half acquired from Zoila and Antonio Buzo, and not to
the half *cuerda* acquired from Juana Domínguez.

"With respect, therefore, to the lot acquired from the Buzo, which
appears to have been purchased by Andino, it appears from the testi-
mony of the witnesses that although Zoila Buzo, 49 years of age,

stated that it belonged to him by inheritance from his mother, he had never lived on the estate nor had his mother, although the grandparents had, and he did not know the exact situation of his property and the boundaries thereof to such an extent that the boundaries appearing in the private document of sale to Andino had to be given by a third person, who claimed to be taking care of the estate and who has not testified.

"This same tract of a *cuerda* and a half appears to have been purchased under a public document by Amalia Cepeda on August 26, 1902, of Daniel Matos Quiñones, who had it recorded in the registry of property by virtue of proceedings to establish ownership.

"From the result of all the documentary evidence and the testimony of the witnesses on this point we arrive at the conclusion that: 1. Said tract of a *cuerda* and a half, which Zoila and Antonia Buzo sold to Adolfo Andino, is the same which Daniel Matos Quiñones sold to Cepeda, as to which there can be no doubt because Surveyor José Claudio, who measured it in 1901 for Andino, also surveyed it in 1905 for Cepeda, and found it to be the same, in addition to the fact that the plans submitted by both sides also prove it, showing as they do that there can be no doubt of their identity; 2. That the Buzos as well as Matos derive their rights from hereditary titles; 3. That the property which Matos inherited is the same which he sold to Cepeda; 4. That on the other hand the evidence is very doubtful as to the question whether the property that the Buzos inherited is the same property which they sold to Andino; 5. That Matos and his purchaser Cepeda have recorded the ownership, which the Buzos and Andino have not done; and 6. That years ago Andino lost the possession of these lands, and Cepeda holds them.

"In view of these facts and conclusions, we find that the preponderance of the evidence is in favor of Cepeda with respect to the fact that his property, consisting of a *cuerda* and a half purchased from Matos, is the same which the latter inherited and also that the property inherited by the Buzos is not the same they sold to Andino. In other words, Cepeda acquired from the real owner of the land, while Andino did not acquire from the latter but from another person who, having an inheritance, believed that it was the one he was selling.

"He has not established his opposition, therefore, in a manner to acquire the ownership by prescription and with respect to said *cuerda* and a half the petition he filed should be dismissed, but allowed as to the other section bought of Juana Domínguez and as to the tract described under letter A, without any taxation of costs."

The appellant maintains in his brief that the estates in litigation are not the same, because although they have common boundaries on the north and east, the southern and western boundaries are not the same.

These discrepancies are of no importance and are common in cases of this class when boundaries of a certain kind are involved.

If to arrive at the conclusion that two rural estates under discussion are the same, it were necessary to decide solely by the absolute equality of boundaries, it would then hardly ever be possible to arrive at such conclusion in view of the mode of living of our country people.

But there is an important witness to the identity of these two estates, namely, Surveyor José Claudio, who was introduced by both parties.

This witness says at the end of his declaration that the land which he surveyed for Andino and Cepeda was the same.

It is evident, as the appellant says, that the right of either of the litigants to the land in question cannot be deduced from this fact, but it must be agreed that the testimony of this witness who is versed in these matters by virtue of his profession, dissipates the doubt which appears to arise on account of the difference in the southern and western boundaries. The land which Andino surveyed and made a plan of for Cepeda is the same, and as no other land is in discussion here it must be conceded that these two men are prosecuting these proceedings because they believe themselves entitled to the one and the same tract of land.

The trial judge after a consideration of the evidence presented by both parties, holds that the evidence is contradictory but that the preponderance thereof is in favor of Cepeda in that the latter acquired from the real owner of the land, while Andino did not so acquire it, but from another person, who having an inheritance believed that the inheritance was what he was selling.

As will be observed, the judge has not violated the provisions of section 162 of the Act to regulate the introduction of evidence, but, on the contrary, has conformed thereto.

The judge does not deny that Zoila Buzo inherited a tract of land from his mother; what he says has not been proved is, that Buzo sold the same tract which he had inherited to Andino. There can be no clearer acknowledgement of the inheritance alleged.

Nor do we find that the trial judge has violated the provisions of subdivision three of article 395 of the Mortgage Law.

Weighing the evidence in a reasonable manner, he admits the opposition of Cepeda and holds that Andino has not established the ownership of the *cuerda* and a half.

That is to say that what should not have been done according to the appellant was to adimt the opposition of Cepeda, because the other declaration is comprised within the provisions of the subdivision and article of the Mortgage Law cited.

But as a matter of fact the second declaration is an immediate consequence of the first one, and in any event this, which in no way prejudices the appellant, would never be a ground on which to base the reversal of the judgment.

At any rate, studying the plans and the evidence, it will be seen that the latter is contradictory in important and decisive particulars which the judge notes, and it is evident that we cannot reverse a judgment when it is not shown to us that the judge, in weighing the evidence in a certain respect, has acted with passion, prejudice or been prompted by some other similar motive.

The judge hears and sees the witnesses; he asks them whether they wish to clear up any doubtful points; he observes their attitude and consequently is in a better position to reach a reasonable conclusion judging with a sound belief and an honest conscience.

Only on serious grounds duly proved can we reverse the action of the trial judge with respect to his findings on contradictory evidence.

We have established the same doctrine in a number of cases, viz: *Morales* v. *Machete Central,* 9 P. R. Rep., 117; *Estate of Iglesias* v. *Bolívar,* 11 P. R. Rep., 422; *Auffant* v. *Serra et al.,* 14 P. R. Rep., 39; in view of the reasons stated, the judgment appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and Wolf concurred.

Mr. Justice del Toro did not sit at the hearing of this case.